THOMPSON, J.
This suit presents a contest between the plaintiff, who asserts a mortgage on two mides, and one of the defendants, 'Emile Lagrange, who claims to be the owner of the mules.
The mules were attached to a plantation owned by the plaintiff’s husband, and were by him soldias a part of the said plantation to the Centerville Company. For the credit portion of the price, the plantation and the live stock thereon were specially mortgaged by act authentic in form and whiqh contained tire pact of nonalienation. The instrument specifically described the live'stock and was duly recorded in the mortgage records, but was not filed specially as a chattel mortgage, nor was it recorded in the chattel mortgage book.
The Centerville Company sold the plantation, including the live stock, to Arthur J. Prevost, who assumed the mortgage debt; and Prevost sold the two mules here involved to the defendant Lagrange. Thereafter the plaintiff, who had inherited the mortgage debt, caused the plantation to be sold under executory process. The property failed to bring enough to pay the debt, and plaintiff brought this suit against the original vendee and mortgagor for the balance. She chused the two mules to be sequestered in the possession of Lagrange, and he was made a party to the suit.
It is undisputed that the mules were sold to Lagrange by Prevost and removed from the place long prior to the seizure and sale of the plantation in the enforcement of the mortgage debt. The good faith of Lagrange in purchasing the mules is not at issue and not questioned.
*572 It is the contention of the plaintiff that the mules having been specifically described in the act of mortgage of the plantation, were quoad the mortgage, immobilized on the plantation, and could not be sold and removed from said plantation to the prejudice of the existing mortgage. And this, it is argued, was the sole and only purpose of Act 169 of 1914, which reads:
“That no mortgage upon rural real estate shall cover, or affect the live stock' upon the said real estate, or that may thereafter be placed thereon, unless the said live stock be specially mortgaged in the act of mortgage, in which case the animals so hypothecated shall be described as near as may be, by kind, age, color, marks, brand and such other indicia by which live stock is identified.”
Prior to the statute above quoted, work animals when placed by the owner on his farm for its use and service became a part of the farm — immovable by destination — and they continued to retain that character as long as they remained on and attached to said farm. If a mortgage was executed on the plantation by the owner, the animals ipso facto fell under and became subject to said mortgage without any specific inclusion and Without any mention or description. And the owner of the plantation was without right to mobilize the animals and to mortgage the same to the prejudice of the existing mortgage, so long as the said movables remained on said plantation.
But notwithstanding this legal fiction of immovability of a movable by nature, it has never been held that when work animals were detached from the plantation by the owner, demobilized, or reinvested with their original natural status, and sold to a third person buying in good faith, that such animals remained under and were affected by the mortgage. On the contrary, the courts have consistently and uniformly held that the moftgage affects the immovables by destination only so long as they remain on the plantation to which they are attached, and that the mortgage ceases to have any effect as soon as the animals are removed and sold to a third person. We said in Bon Air Planting Co. v. Barringer, 142 La. 62, 76 South. 235:
“The decisions of this court and the unanimous opinion of the Ereneh commentators are to the effect that an immovable by destination, sold in good faith and removed from the realty to which it was attached, again becomes movable.”
See, also, Bank v. Knapp, 22 La. Ann. 117; Weil v. Lapeyre, 38 La. Ann. 303. In the last-mentioned case it was said:
“ * '* * But the effect of the mortgage on such movables is maintained only as long as the condition of immovable by destination continues, hence the owner may remove them from the mortgaged premises, and if the removal is done in good faith, and if by means of a sale, it is followed by delivery to the purchaser equally in good faith, the effect of the mortgage thereon is destroyed.
“Hence; in such a case, the creditor cannot pursue such things in the hands of a third party, purchaser and possessor in good faith, so as to subject them to his mortgage.”
The rule thus so tersely stated was not affected by the act of 1914. If it had been the purpose of the Legislature in retiring special inclusion and specific description in an act of mortgage of immovables by destination to change the rule so well established by jurisprudence and to extend the effect of such mortgage of the immovables by destination so as to affect such movables when detached and sold to a third person purchasing in good faith, it would have been so expressed in unmistakable language. There is nothing in the. statute justifying such an interpretation, even by implication. In view of the existence of a chattel mortgage law {Act 65 of 1912) at the time the act of 1914 was passed, the obvious purpose of requiring specific mention of the live stock on farms in an act of mortgage was to leave the owner of the plantation free to grant a chattel mort-gage on his live stock and to treat such live *574 stock as movables when they had not been so included in a special mortgage on his farm.
If the contentions of counsel for plaintiff were adopted, then no sale of mortgaged immovables by destination when removed and detached from the plantation would ever free such movables from the mortgage, and such movables would be so burdened even in the hands of a purchaser in good faith ten times removed from the original mortgagor. And the same would be true of standing timber which is declared to be an immovable even when segregated in ownership from the land. If the timber is cut and removed while subject to a mortgage on the land, the mortgage would follow the timber, when so cut and removed, into the hands of third persons purchasing the same. It would be unsafe for a person to purchase even the lumber manufactured'out of such timber.
It is argued that if the court should find that there was no mortgage on the mules as an immovable, the mortgage should be given effect as a chattel mortgage under Act 198 of 1918. We have seen that the act of mortgage was not filed nor recorded as a chattel mortgage, and there is nothing to indicate an intent on the part of the parties to the act to give it the effect of a chattel mortgage, except the mere fact that the act in form was sufficient to confer a chattel mortgage if it had been filed and recorded as such in a book provided for that class of mortgages. The argument is made on the theory that a number of different contracts may be embodied in one instrument. That a document intended to embody one contract, eyen though void for some defect, may still be good as another contract and be used as the basis of some other right if it meets legal requirements.
That may be true as a general proposition and under i * ptain conditions, but it cannot be true when applied, to this ease. That the parties intended to mortgage, and in fact did mortgage, the mules as immovable by destination — as a part of the plantation — and did not intend to mortgage them as personal chattels, appears patent upon the face of the mortgage itself. At the time the mortgage was consented to, the mules did not possess the character of movable property. They were confessedly a part of the plantation, and the owner, after granting the mortgage on the mules as a part of his plantation, could not change their destination and convert them into movables.
It would therefore appear to be illogical to say that the conventional mortgage operated simultaneously and concurrently, as both a conventional mortgage on the mules as immovables and a chattel mortgage on them as movables. This, it seems to us, would be a legal impossibility. And it would be equally as unfounded in law and reason to say that as a chattel mortgage it remained dqrmant so long as the mules were on the place, but sprang into life or was revivified as a chattel mortgage as soon as the mules were detached from the place. If there was no chattel mortgage in the beginning, and we have seen there could be none by reason of the immovable status of 'the mules, none could thereafter be created, or spring into existence from the conventional act of mortgage, as a result of the act of demobilizing dhe mules by the owner.
We think that the judgment of the Court of Appeal, in so far as it held that the defendant Lagrange acquired the two mules free from any mortgage, conventional or chattel, is correct, and the same is affirmed at the costs of the plaintiff.
Rehearing refused by Division A, composed of O'NIELL, O. J., and ROGERS and BRUNOT, JJ.